IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

NATHAN C. GRAY,                        )
                                       )
                Plaintiff,             )
                                       )
vs.                                    )        Case No. 08-3066-CV-S-ODS
                                       )
NYK LOGISTICS (AMERICAS) INC.,         )
                                       )
                Defendant.             )

ORDER AND OPINION SETTING FORTH
FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF JUDGMENT FOR DEFENDANT

        Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, and based on all
files, records, memoranda, and arguments of counsel for all parties, both orally and in
writing, the Court makes the following findings of fact, conclusions of law, and order.

## *I.  FINDINGS OF FACT*

1.      Plaintiff Nathan C. Gray (Gray) is an individual residing in Greene County,
        Missouri, and a citizen of the State of Missouri.

2.      Defendant NYK Logistics (Americas) Inc. (NYK) is a corporation duly organized
        and existing under the laws of the State of Tennessee with its principal place of
        business in Tennessee at all times relevant.

3.      NYK is engaged in the business of providing transportation services for
        shipments of freight for various customers throughout the United States.

4.      Since 1994, NYK has charged its customers an administrative fee on all loads
        shipped by NYK.  The administrative fee covered various expenses, such as
        providing benefits to sales representatives and supporting NYK's overhead and
        administrative salaries and bonuses.

1

5.      James Craig (Craig) is the senior vice president of sales and marketing at NYK.

6.      In 2000, Craig met with Gray to discuss Gray's potential employment with NYK. Craig informed Gray of the administrative fee that NYK included on all loads shipped for its customers. Craig further explained to Gray that the administrative fee was one of the costs deducted from the invoice amount received from the customer before NYK arrived at the gross margin from which all sales executives' commissions were computed.

7.      In late 2000, Gray began working as a sales executive for NYK's Springfield, Missouri branch office. Gray's primary duties were to initiate, procure, and maintain business accounts so that NYK could provide logistic services to those businesses.

8.      Gray's employment at NYK provided him access to the Excel spreadsheet program NYK used to prepare its customer invoices. This program identified all the costs or payables used to calculate the invoice amounts billed to the customer. One of the payables specifically identified in the Excel program was the administrative fee.

9.      While negotiating with a potential NYK customer in 2000, Gray suggested to NYK representatives that the gross margin produced on the account would increase if the administrative fee was omitted from the gross margin calculation.

10.     From 2000 until 2003, Craig was employed with NYK without the benefit of a written contract of employment.

11.     Effective January 1, 2003, Gray and NYK continued Gray's employment relationship pursuant to a written Employment Agreement. The Employment Agreement provided for a 1-year term of employment, subject to automatic renewal for further 1-year terms. The contract also stated that NYK could terminate Gray's employment for cause.

12.     Addendum A to the Employment Agreement provided that Gray would receive an annual base salary of $160,000 plus a bonus equal to 25% of gross margin produced in excess of 4 times his annual salary. The term "gross margin" was not defined in the Employment Agreement. Addendum A further stated that its

2

compensation provisions applied to Gray only so long as Gray continued to be compensated via base salary (non-commission).

13. In accordance with Addendum A, NYK paid Gray a guaranteed salary of $160,000 in 2003. Gray also was entitled to a bonus of 25% of gross margin revenue production in excess of $640,000 (four times Gray's base salary of $160,000.

14. Consistent with its established policies and practices, NYK calculated Gray's gross margin production in 2003 by subtracting from the invoice revenue received from the customer all applicable payables, including purchase transportation costs, surcharges, and the administrative fee. Gray's W-2 earnings for 2003 were $382,565.48.

15. The parties allowed the Employment agreement to automatically renew for 2004.

16. Effective January 1, 2004, NYK and Gray agreed to revise Gray's compensation formula, switching from the base salary arrangement to a pure commission compensation model in which Gray would be compensated at 25% of gross margin in production. NYK continued to calculate gross margin as it had done in 2003 (subtracting from the invoice revenue received from the customer all applicable payables, including purchase transportation costs, surcharges, and the administrative fee).

17. In April 2004, during an annual sales meeting, Gray and other sales executives were informed that the administrative fee would be increased from $6.00 per load to $16.00 per load. Gray objected at the meeting to NYK's increase in the administrative fee, but he did not object to the inclusion of the administrative fee itself in the calculation of gross margin.

18. All NYK employees (including Gray) received a memorandum from NYK dated May 27, 2004, advising that the administrative fee was being increased to $16.00 per load effective June 1, 2004.

19. In 2004, Gray's W-2 gross earnings from NYK were $849,374.92.

20. The parties allowed the Employment Agreement to automatically renew for 2005. Gray's W-2 gross pay earnings from NYK for 2005 were $695,556.71.

3

21. By letter dated September 6, 2005, Gray's written Employment Agreement with NYK was terminated effective December 31, 2005. Effective January 1, 2006, Gray was employed at will with NYK.

22. In 2006, Gray's W-2 gross pay earnings from NYK were $798,262.82.

23. On December 11, 2006, all NYK sales team members (including Gray) were advised that the administrative fee payable on each load would increase from $16.00 per load to $20.00 per load effective April 1, 2007.

24. NYK terminated Gray's employment on June 8, 2007. Gray's 2007 W-2 gross pay earnings from NYK were $334,538.77.

25. Gray and NYK had never agreed to a restriction of NYK's right to use an administrative fee to help offset various overhead and administrative costs as part of doing business.

26. Throughout his employment, Gray accepted checks on a monthly basis from NYK with full knowledge that NYK deducted an administrative fee before arriving at the gross margin from which Gray's commissions were calculated.

27. From time to time during Gray's employment, NYK changed load commission designations from Gray's commission account number to either other sales executives or to a general branch designation.

28. There was never any contractual restriction on the right of NYK to assign its accounts to any of its particular sales representatives or branches. Moreover, NYK never guaranteed Gray any right contractually to receive commissions on any particular account of NYK for any particular duration.

## II. CONCLUSIONS OF LAW

Tennessee law governs the breach of contract claims in this case pursuant to paragraph 18 of the Employment Agreement. Under Tennessee law, the essential elements of a breach of contract claim are: (1) the existence of a contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of that contract. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671,

4

676-77 (Tenn. Ct. App. 2007).

The cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties. If the language of the contract is clear and unambiguous, the literal meaning controls. Otherwise, if the language is of uncertain meaning and may fairly be understood in more ways than one, the contract is ambiguous. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-04 (Tenn. 2008).

With respect to Gray's claim that NYK breached the Employment Agreement with him by deducting an administrative fee before calculating gross margin, the Court finds that the term "gross margin" in Addendum A of the Employment Agreement is ambiguous because the term is of uncertain meaning and can fairly be understood in more than one way. When a contract is ambiguous, Tennessee courts use parol evidence, including the contract parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 310 n.9 (Tenn. 2009); *see Earle v. Illinois Cent. R. Co.*, 167 S.W.2d 15, 47 (Tenn. Ct. App. 1942) ("Where the question is . . . what construction shall be placed upon an agreement where its terms are not clearly defined, the acquiescence by one party in the other's known construction, and compliance with his demands, is material and throws much light on the question at issue.' [Citations omitted.]")

At trial, Craig testified that NYK had included an administrative fee in its calculation of gross margin since 1994. Craig further testified that prior to the execution of the Employment Agreement in 2003, he informed Gray that NYK deducted an administrative fee from the customer's invoice revenue in determining the gross margin from which sales executives' commissions were calculated. In addition, Craig stated that Gray had access to NYK's Excel Spreadsheet program used to determine the amounts billed to the customer and that the administrative fee was a cost or payable specifically identified in this program. Craig also testified that in 2000 Gray

5

demonstrated his understanding of NYK's use of an administrative fee during negotiations with potential customer by attempting to persuade NYK representatives that removing the administrative fee from their calculation of gross margin would increase production on the account. The Court finds Craig's testimony credible. Thus, based on Gray's conduct and NYK's history of including an administrative fee in its calculation of gross margin, the Court concludes that the parties executed the Employment Agreement in 2003 with the intent that the costs of an administrative fee would be deducted from the invoice amount to the customer to calculate Gray's gross margin produced. Accordingly, NYK's use of an administrative fee in computing Gray's commissions did not violate the Employment Agreement.[1]

Regarding Gray's claim that NYK misallocated sales commissions in violation of the Employment Agreement, the Court finds that the Employment Agreement contained no restriction on the assignment of particular accounts to Gray for any particular duration. NYK retained the right to assign its accounts to its employees as it deemed appropriate for conducting its business operations. The Court further finds that any account reassignments to a different sales executive or branch of NYK was done in good faith by NYK and for legitimate business reasons, including a client's request that Gray not be involved with its account, client account situations where Gray was not responsible for servicing and handling the accounts, and when Gray was improperly and wrongly designated initially as the sales representative to obtain commissions on NYK accounts. As a result, the Court concludes that NYK has not violated any contractual obligation to Gray by reassigning any accounts for which Gray was paid a

---

[1] In his Supplemental Trial Brief (Doc. # 56), Gray claims for the first time that during discovery NYK suppressed and withheld the following documents: (1) a Standard Commission Schedule; (2) Customer Invoices; and (3) the Excel Spreadsheet used for pricing customer invoices. Gray argues that a negative inference should arise against NYK for its failure to produce these documents during discovery, citing *Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir. 1990). However, the negative inference Gray seeks is not warranted. Gray has established no record for this Court to rule that NYK actually failed to produce these documents during discovery. Moreover, Gray waived any challenge to this evidence when he failed to timely object to its admission at trial. *See* Fed. R. Evid. 103(a)(1).

commission on any particular shipment during his employment with NYK.

Turning to Gray's claim of quantum meruit, this claim is governed by Missouri law. One of the key elements to this theory of recovery is that the defendant has failed to pay the plaintiff a reasonable value of the plaintiff's services. *See Hawk Isolutions Group, Inc. v. Morris*, 288 S.W.3d 758, 761 (Mo. App. E.D. 2009). Here, Gray's quantum meruit claim is predicated on the same allegations as his claim for breach of contract. Since this court already has determined that Gray received all the compensation to which he was entitled under the Employment Agreement, Gray's quantum meruit claim similarly fails. Moreover, the Court concludes that Gray's gross earnings reflected on his W-2s demonstrate he received a reasonable value for his employment services rendered to NYK as a sales executive.

As the above findings reflect, NYK is the prevailing party in this action. NYK has asserted a claim for attorney fees as the prevailing party. Paragraph 17 of the Employment Agreement states that if either party employs an attorney to enforce the terms of the contract through judicial proceedings, the prevailing party is entitled to receive its expenses, including attorney fees in connection with the action. Courts in Tennessee follow the American Rule, which provides that a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 308. Although no published case from Tennessee could be found that is directly on point, several unpublished decisions from the Tennessee Court of Appeals invariably have held that when a contract provides that the prevailing party is entitled to attorney fees in litigation to enforce the contract, the court has no discretion whether to award attorney fees. *See, e.g.*, *Temple Baptist Church v. C & H Commercial Contractor, Inc.*, No. M2006-02507-COA-R3-CV, 2007 WL 4991302, at *4 (Tenn. Ct. App. Dec. 12, 2007); *Clarkson v. Clarkson*, No. M2006-02239-COA-R3-CV, 2007 SL 3072772, *5 (Tenn. Ct. App. Oct. 22, 2007); *Seals v. Life Investors Ins.*

7

*Co. of America*, No. M2002-01753-COA-R3-CV, 2003 WL 23093844, *4 (Tenn. Ct. App. Dec. 30, 2003). Notwithstanding this rule, however, the Court retains the discretion to determine what constitutes a reasonable award of attorney fees. *See Keith v. Howerton*, 165 S.W.3d 248, 250-51 (Tenn. Ct. App. 2004).

## III.  ORDER

It is hereby Ordered that judgment be entered in favor of NYK on Counts I and II of Gray's complaint and on NYK's counterclaim for attorney fees and costs. Within 20 days of the date of this Order, NYK shall file with the Court its request for attorney fees and costs as the prevailing party on Gray's breach of contract claim. Any objections to the request for attorney fees and costs filed by NYK shall be filed by Gray within 10 days of the filing by NYK of its request for attorney fees and costs. Final judgment on this case will be entered following the Court's order on NYK's request for attorney fees and costs.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: September 24, 2009            UNITED STATES DISTRICT COURT